Good morning and welcome. We're here today for the argument of Armstrong v. Michaels Stores and we're also, Judge Fletcher and I, pleased to be joined by Judge Bennett who has sat with us a number of times before. You each have 15 minutes per side. Of course, since the case was briefed, we then had the intervening decision of Morgan v. Sundance and we appreciate the supplemental briefing by both sides. So Armstrong's counsel may proceed. Thank you, Your Honor. May it please the court, I'm Thomas Siegel, attorney for Appellant Teresa Armstrong. I'd like to reserve five minutes of my time for rebuttal. Let's start with Morgan v. Sundance. I understand that there were really two relevant holdings in that case. The first, which I think potentially affects really every element of the waiver inquiry, is that there is no federal policy in favor of arbitration. What the Supreme Court said in that case is, when we've referred to a policy of favoring arbitration, all that we mean is that what agreements should be set aside and the arbitration agreements are no more or no less enforceable than any other type of agreement. And I think that impacts not only prejudice, I think we all understand that that impacts the prejudice elements. It also impacts the way that the inconsistent acts element is analyzed because every court in the past deciding these issues, if you read district court cases or the precedents from this court, such as Neuwirth or Fisher or the various cases discussing waiver, they all start off by saying, because of the federal policy favoring arbitration, the party who is attempting to show waiver must carry a heavy burden. But what is very clear is there is no longer a prejudice element. And so at a minimum, we are left with the question of what is the test now? And I think the test is first, is there a known right to compel arbitration? That's something that I don't think was ever really in dispute in this case. Because after all, it's a form arbitration agreement that the defendant employer says that it uses with all of its employees as part of an So I think that the element that's really in dispute is acts inconsistent with the right to arbitrate. And the defendant, I think, is arguing for some kind of hard rule, perhaps the kind of custom made rule that the Supreme Court ruled against in Morgan v Sundance, that there has to be almost an ulterior motive or some kind of conscious strategy, and that we have to prove really, why they arbitrated or why they didn't arbitrate. And I think if you look at the facts of this case, the conclusion should be that if it's looked at holistically, as the new love case the time this case was filed, the US Supreme Court had granted review in the epic systems case. So the defendant had actually a number of options available to it. First, the rule that was under review in epic system was not the law in state court, the California Supreme Court in a decision called Iskanian had held that the National Labor Relations Act does not prohibit class action waivers. So at the time period that this case was being litigated, there was a different rule in state court than there was in district courts within the Ninth Circuit. And the defendant removed the case, which they didn't have to do no defendant ever has to remove in a diversity case or a class action fairness case. And if they simply had stayed in state court, Morrissey, Ernst and Young would have been no barrier whatsoever to moving to compel arbitration. And so the first thing that was inconsistent with their right to arbitrate, particularly given that they apparently see it as a right to arbitrate individually, was the removal of the case to federal court. Let me ask you this, if I may, I'm trying to figure out how far Morgan either does or does not go. And what Morgan means when it says we don't consider prejudice anymore. It's common for lawyers on both sides to try and figure out whether the judge they have is favorable. And if they don't think they have a good enough chance in front of this forum, they might have an option to go to a different forum. So that's why you get removal. That's why you insist on arbitration. And it's not uncommon for defendants who have a right to arbitration under the contract to dilly dally a little bit before moving to compel arbitration as they size up the judge. Let's imagine that we have a case where there's a delay of maybe 10 months or so between the time of filing the complaint and the motion to compel. And during that time, the defendant has had the opportunity to size up the judge, maybe first the district judge and then second the federal, first the state judge, and then maybe the federal district judge. Is that time period, sizing up the district judge, first the superior court judge and the district judge, and then 10 months later, deciding to move to compel. Is that somehow a prejudice analysis that we can no longer consider? I'm trying to figure out if after Morgan, we just look at time and we don't look at anything else. I don't think it's just time. But I think that allowing time to elapse is itself an action. So if you wait for 10 months, I think there is a reasonable inference that you were not just testing the waters, but going for a swim, so to speak. And I think that being in federal court for 10 months does support an inference that the defendant wanted to be in federal court. And wanted to be in federal court until they didn't. Right. And part of this is that I suppose that once the Epic Systems decision came down, they decided, well, now there's no possibility at all that we will be forced into class arbitration. I think they had a very good chance of avoiding class arbitration under the law as it existed because of John Amati and because their class action waiver in the agreement was written to be optional. But I think this is indicative of a weighing of two options. And once the Epic Systems decision came down, arbitration became a more tempting forum for them. But I think that should support a finding of waiver because we want litigants, both for the purposes of the Federal Arbitration Act, after all, arbitration is supposed to be speedy, but also for purposes of judicial efficiency and not having cases hanging around on the court dockets. I think we want litigants who have an arbitration agreement and who they want to arbitrate to pursue that expeditiously. But isn't it more than time, though, in terms of inconsistent actions? So don't we have to weigh when they answered, they raised the arbitration when they had the joint case management conferences, arbitration was weighed again or raised again. We have to weigh that also against the other actions they took, such as what's been characterized as limited discovery, no substantive motions. So what guidance do you think we have in putting that constellation of decisions to determine whether there was a waiver, which I understand is still your obligation or burden going forward, is that correct? I think it's an open question as to whose burden it is. The only thing I think we can say for sure is that the language about it being the acts that the defendant took, I would point out as a factual matter that their statements and their answers were somewhat equivocal. They didn't say plaintiff Armstrong signed an arbitration agreement. They say her claims are barred to the extent that she's bound by an arbitration agreement. And similarly, in their case management conference statement, I think the way they phrased it is actually very telling. They said something to the effect of defendant would like to conduct discovery and then file a motion for summary judgment and a motion to compel arbitration. So it seems like they did want to do discovery. Some of that discovery was focused on class issues. They also in their case management conference proposed, I don't think they proposed formal bifurcation, but they did say that they believe that discovery initially should focus on class certification issues. So all of that I think is indicative of wanting to be in federal court. And of course, you know, based on experience in many, many cases, what usually happens is when there's an arbitration agreement, the defense attorney reaches out at the beginning of the case and says, did you know your client signed an arbitration agreement? And will you stipulate to arbitrate? And the opposite of that is what happened here. They charged full speed ahead. They propounded discovery, which we responded to. One of the questions in discovery was whether the appellant had ever filed for bankruptcy, which I think does not relate to the merits for wage in our case, and I think would relate to being an adequate class representative. But if I say I have about four minutes left, so I'd like to save it for rebuttal unless the court has any further questions. I do have one question is what is the impact of having at least the Paga claim as of that time being non-arbitrable? Well, so I actually think that the case that discusses this, and it's either Martin versus Yasuda or the Fisher case, one of those two cases, says that that's really a relevant consideration where the defendant could not have moved to compel arbitration earlier. But if the defendant could have moved to compel arbitration earlier, it really isn't that relevant that the discovery might have related to arbitrable claims, non-arbitrable claims. And of course, I also think that that is potentially a prejudice issue, really. That would really be an argument that Armstrong wasn't prejudiced, that the discovery could have been used in the Paga claim. Thank you. We'll hear from Michael Storrs. Good afternoon, and may it please the court, Aileen McGrath for appellee Michael Storrs. I'd like to start with the question that Judge Fletcher was asking, which is about the impact of Morgan on this court's waiver standard, because I actually think the court in Morgan was very clear on this point and where it left the waiver standard in circuits like this one that had previously applied a three-prong test. The court said that that standard is stripped of its prejudice requirement, but retains its independent focus on the defendant's conduct. So just as the Eighth Circuit applied a previous three-prong test, the court in Morgan made clear that that test now has two prongs looking at the defendant's actions, and the same is true here. And so as a result, all of this court's previous case law about what constitutes inconsistent acts in the waiver context remain good law. And under that case law, the conduct at issue in this case does not come close to rising to the level of what this court has found to be inconsistent acts in the past. And I do want to pause there and make clear, because I think I heard plaintiffs suggest that our position is that Michael's subjective views about whether it could move to compel arbitration and when is determinative. That is actually not our position at all. I think we can we can quickly cut through the questions about the impact of ethnic systems and what Morris meant and what it didn't mean by saying that none of that matters at all. The arbitration, the waiver standard, presumes that defendants have an enforceable arbitration agreement to begin with. If you look at the lion's share of waiver cases from this court and from the district courts, the question of whether a defendant could have moved to compel arbitration at the outset is undisputed, and that's because it doesn't matter. And it follows as a matter of logic. There can be no way- Okay, counsel also said with respect to burden that the answer is I don't think that's true at all, your honor. I think there's again an easier way to dispense with that, which is to say that this isn't a case where the burden of proof matters at all. The facts in this case are not close. They do not remotely approach the motions practice, the depositions, the years of delay. What is your position? Whether it matters or not, what's your position on who has the burden on the waiver? Oh, I think that the plaintiff surely has the burden. I mean, that is undisturbed after Morgan. And this court has always made clear, going back to its decision in Cox, that arbitration, that waiver rather, is an affirmative defense. I think it goes without saying that the party arguing waiver has the burden of proof. And so I don't think there's any way before or after Morgan that plaintiffs can argue that they have no burden or that the defendants have the burden of proof. The burden lies squarely on the plaintiffs in waiver cases and nothing about Morgan changes that. But I think that the more, you know, it gets back to my original point, which is whether the court needs to confront those questions here. And I think the answer is that it does not, because Judge Koh made abundantly clear that burden, heavy or otherwise, played zero role in her analysis. Judge Koh- Can I ask this in a second? In terms of the questions before the court, I guess the first question is, does the entire 10 month period require consideration? You have seven months when Epic was pending, and you have the futility argument in terms of whether or not it would be futile, particularly in light of the Jehomadi, if I'm pronouncing it correctly, at Mars. And then you have three more months after Epic in which there was no movement. What is your position in terms of what time period should be considered by the court, 10 months or three months? Judge Koh- You know, again, I think that this court, the answer is the same whether the court looks at the 10 month or the three month period, is that the conduct that happened during that period did not rise to the level of inconsistent acts. I mean, I think the answer is that under this court's precedent, you have to take a holistic review. And under that holistic review- Judge Kohl- What happens if I think that three months or 10 months does make a difference? Are you arguing for three months? And if so, why? Judge Koh- You know, I think we agree with the finding that Judge Koh made here, which is that Michaels had a good faith and credible belief that it could not move to compel arbitration at the outset of this case, which would trigger the 10 month period that your honor is asking about. I think- Judge Kohl- I'm sorry, I didn't mean to interrupt you, but it would trigger, excuse me, I apologize, but it would trigger seven months in terms of your futility argument as to the three months after Epic is ruled upon. Where's the argument in terms of futility there? Judge Kohl- I don't think we're making any futility argument during that time period. I think that whichever time period you look at, you know, the time period alone, whether viewed alone or in combination with the very little litigation activity that happened in this case does not approach what this court has ever found to constitute inconsistent act. I mean, there is not a single case from this court that I am aware of that has ever relied heavily on the period of time between when the case was filed and when the motion to compel arbitration was filed. Every waiver case that this court has ever decided and found against a defendant has involved motions practice. That has been a consistent, inconsistent act across all of those cases. Judge Kohl- Can I address that point? And as a version of the question I asked your adversary, in the pre-Morgan case law, where you not only had to have actions inconsistent, but you also had to have prejudice, it was not absolutely necessary to sort out precisely which category certain acts fell into or didn't fall into. But I can see why an act moving forward and it's some kind of a further and further along in the case allows the litigants to size up the judge and allows the party who eventually moves to compel to decide, you know what, I really don't want to be here. So that sounds a little bit like prejudice to me. And now that prejudice is gone, why do we insist upon dispositive motions that might have been used as a way of sizing up what the judge is going to do? Because I think notwithstanding prejudice, Judge Fletcher, the test has to look at what the defendant did. Judge Kohl- I understand that. But my question is, do we look at dispositive motions in the same way we used to before Morgan was decided? Because before Morgan was decided, dispositive motions carried with them a certain amount of prejudice or maneuvering for advantage. But prejudice, and I think maneuvering for advantage probably comes under that heading. Prejudice is gone now. So why is a dispositive motion stand on the same footing now as it did before Morgan? Because I think filing a substantive or a dispositive motion is the quintessential kind of action that a defendant takes when they want to litigate a case, which is the test. The test is whether the defendant- Well, I can see why filing a dispositive motion really looks like waiver. And that makes the case very easy. But I'm not sure that we need a dispositive motion anymore now that Morgan has been decided. You know, I think that this case doesn't present- The point that I'm trying to make is that as a descriptive matter, a dispositive motion has been a chief factor in the inconsistent acts analysis in every case. And so if this court is going to expand to include any other sort of activity short of dispositive motions, that will be expanding what this court has always said about inconsistent acts. But to be clear, I'm not suggesting that any bright line rule applies. I agree with what this court has always said, including most recently in North, that you apply a holistic standard. And I think applying that holistic standard, the litigation conduct in this case does not come close to that that suggests that a defendant wants to abandon its contractual right to arbitration. So here we have, if we take what you say, we're really off the cliff if you file a dispositive motion. But what do you think is the standard or the benchmark for, and we don't have that case here, for how you judge other activities such as some discovery appearing at the case management conferences, et cetera? I think you have to ask whether that conduct is inconsistent with the defendant's contractual right to such an extent that it suggests a knowing relinquishment of that contractual right. I mean, I think this also follows from Morgan, where the court reiterated that courts have to treat arbitration agreements no more, but also no less favorably than ordinary contract cases. And I think the court would have to ask the same question it would ask in an ordinary contract case, which is whether the circumstances suggest that the defendant has knowingly relinquished that contractual right. And here I think an important piece of the puzzle that Judge McEwen, you've already alluded to, that I think disposes of any questions about whether the limited discovery here, the five interrogatories, the 28 pages of documents, constitutes an inconsistent act. And that is the fact that from day one of this case, this case involved a claim that could not be arbitrated. Under the law that was in effect at the time, as this court knows well, the pocket claim that defendants added could never be decided in arbitration. You say from day one, that's not true. The pocket claim was added only after it was removed to federal court. Isn't that right? It's true that that was added after it was removed to federal court. So it was not true from day one? No, it was true from day one that Michaels knew that this case would include a pocket claim. And that is because under the California Labor Code provisions governing pocket claims, plaintiffs who want to notice that they intend to file that claim. This is in the record. Plaintiffs alleged on December 15th that they complied with that 65 day notice requirement. This is on ER-449. And so counting backwards, that meant that I think actually on day zero, that this case was filed in state court. Michaels knew that a pocket claim was coming. So the pocket claim. So what is, what though is, I am a little bit troubled by the argument that simply because one removes a pocket claim that you have somehow indicated waiver. What do the cases say about that? I'm not aware of a single case that has said that removal constitutes waiver. I don't think there's anything and I don't, I don't understand plaintiffs to dispute that. Instead, I understand their argument to be, well, there's something special about this case that suggests that removal is somehow different. But there is nothing special about this case. To start with, the premise of plaintiff's argument is that we could have moved to compel arbitration more easily in state court. There is actually zero reason to believe that is true. Plaintiffs have never, I mean, it is true that the California Supreme Court had recognized in the Iskanian decision that the NLRA does not preempt employment agreements containing collective action waivers. It is equally true that California law is more hostile to arbitration on a range of topics, ranging from unconscionability to assent and so forth. So there is actually zero reason to believe, as plaintiffs have suggested, that we could have moved to compel arbitration one day sooner in federal court. But even putting that aside, I think the chief reason that removal is not an inconsistent act is the one that Judge Koh touched on, which is that cases that are removable reflect Congress's judgment about when cases can or should be litigated in federal court. And here, Michaels had the right, under federal law, to remove this case and to litigate any piece of it that needed to be litigated. That included the motion to compel arbitration. It included the PAGA claim that Michaels, as I said, knew was coming, that Michaels knew had to be litigated in court, state or federal. And it included, as plaintiffs acknowledge, on page two of their supplemental brief, sometimes motions to compel go sideways. And so by removing the case, Michaels was simply protecting itself against the possibility that some, and we knew some, but perhaps all of this case would have to be litigated in court. There's nothing about that scenario that is inconsistent with Michaels' intention to preserve its contractual right to arbitrate. And finding otherwise will punish and create perverse incentives for defendants who Congress has said should be able to remove cases, should be able to litigate those cases in federal court by encouraging them to remain in state court or risk waiver. And there's simply no- If we don't agree with your argument that Epic held things in abeyance, in effect, then we have a 10-month delay before moving for arbitration, correct? That's correct. That's correct. So let's just take that and assume, and I'm not saying one way or the other, but let's just assume that is the delay period. What is your best argument on why that is not a waiver given the discovery? Because nothing that Michaels did in that interim 10-month period suggests an intent to relinquish its right to arbitrate that contract. Michaels served, I mean, I think by any measure, if you look at this discovery, the discovery is de minimis. We are talking about five interrogatories and a handful of documents. But when you look at that discovery with the context, the important context, I think, of the PAGA claim, I think there's really no argument that that discovery is an inconsistent act because plaintiffs have never disputed this. It directly related to the PAGA claim that would always have to be litigated in federal court. And I think, again, it follows logically that when a case includes a non-arbitrable claim, in general, a defendant cannot act inconsistently with its contractual rights to arbitrate other claims by engaging in limited litigation activity that relates to those claims, which is all that Michaels did. I haven't heard plaintiffs identify anything else about this case that they suggest is an inconsistent act other than that discovery and the removal, which we've already discussed. And again, not to belabor the point that that case is the facts in this case are so distant from the motions practice, the hundreds of thousands of pages of discovery, the years of delay, the defendants who kept arbitration in their back pocket and never mentioned it for years into a case until they decided that they were better off in arbitration. Nothing in this case comes close to approaching that level of conduct. And I see my time's expired. So unless the court has any other questions, I have nothing else. Thank you. It appears not. Thank you very much. Mr. Siegel. Thank you. So I think that, you know, one point that there's emphasizing here is that when we did ultimately oppose the motion to compel arbitration, the only grounds we raised were actually related to timing. There was the waiver issue and also an issue that's not before the court now about whether they violated the contractual language of requiring arbitration as soon as possible. And so this is not a case where there would have been unconscionability or other arguments raised or contract formation. And I think you actually hear in counsel's argument, a sophisticated comparison of the advantages and disadvantages of federal versus state court. And so, you know, they did choose a federal forum, which is their right. But I think and I'm not suggesting that the removal is enough by itself. But I think that that is something that plays into the inconsistent acts analysis, because, you know, overall, they thought they'd be better off in federal court. Well, I'm not sure I agree with you on that point. I think they were better off in federal court in terms of making their motion to compel. That is to say, I think the removal to federal court may very well have been in furtherance of the motion to compel that they were more likely to succeed with in federal court. Well, but this case was removed to federal court under the class actions Fairness Act, correct? That's correct, Your Honor. And but they didn't have to remove. And I think not only could they file a motion to compel and have the benefit of Iskanian, which was a more, you know, favorable rule to defendants in the Ninth Circuit rule. You also get in state court other advantages, like if you move to compel, and you lose and you automatic state, whereas in federal court, if you lose a motion to compel arbitration, you don't get an automatic stay at the case. And you know what, the path you're going down is a little troubling to me, because there is, of course, a statutory right to removal. And if it's not just this case, but others, if we get into a backwards dissection, and a weighing of what would be strategic decisions about removal, it seems to me that's a dangerous path for determining whether conduct is inconsistent. So are you really suggesting that we should start marching down like what would be the advantages to have remained in state court? What are the advantages or disadvantages of federal court? No, I mean, I think the court makes a good point. I think the point I'm really making is that, you know, this is a sophisticated litigant, represented by, you know, very able counsel. And I think that there were reasons why they did what they did. And they didn't file a motion to compel arbitration for 10 months. Their own case management conference statement indicates that one of the reasons is because they wanted to conduct discovery. And so I think it's the totality, it's not any one thing. It's the discovery they propounded, it's proposing to the court that discovery focused on class certification issues. And, you know, there isn't complete overlap between class certification and PAGA. Because for example, the question asking the class representative whether she ever filed for bankruptcy, that has no relevance in a PAGA case, it would only be relevant to some kind of determination of whether she can be a class representative or not. Thank you. Thank you. Anything further? Well, I'd like to thank both counsel for your helpful arguments this afternoon and for your briefing, as I mentioned earlier, the case of Armstrong v. Michael Storrs is submitted and we're adjourned. Thank you.
judges: McKEOWN, FLETCHER, Bennett